**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **Jose Bolanos,** | ) | Case No. 11 B 31339 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **Quality Food Products, Inc.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 11 A 02398 |
| | ) | |
| **Jose Bolanos,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION**

This adversary proceeding involves a trust established by the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-499t (2006) ("PACA"), and defined at 7 U.S.C. § 499e(c). The question raised is whether a person subject to this trust who fails to secure payment for commodities that the trust encompasses incurs a debt excepted from discharge in bankruptcy under § 523(a)(4) of the Bankruptcy Code (Title 11, U.S.C.). The complaint in the proceeding here alleges that the debtor is subject to PACA, that the debtor failed to pay for delivered produce, "thereby breaching his fiduciary duties as trustee" under PACA, and that this breach constitutes "defalcation while acting in [a] fiduciary capacity," which is a nondischarge-

able debt under § 523(a)(4). (Compl. ¶¶ 23, 25). The debtor failed to respond both to the complaint and to a motion from the plaintiff for default judgment. Nevertheless, the court denied the motion, holding that the complaint failed to allege facts giving rise to a fiduciary duty under § 523(a)(4).

The plaintiff has now moved to vacate the order denying default judgment. As discussed below, however, the original ruling correctly applied § 523(a)(4) as interpreted by the Seventh Circuit. The motion to vacate will therefore be denied.

## Jurisdiction

Under 28 U.S.C. § 1334(a), the federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code, but 28 U.S.C. § 157(a) allows the district courts to refer these cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has made such a reference of all of its bankruptcy cases. N.D. Ill. Internal Operating Procedure 15(a).

Under 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code. The determination of the dischargeability of a particular debt—the subject of this adversary proceeding—arises under the Bankruptcy Code and is specified as a core proceeding under § 157(b)(2)(I). Accordingly, final judgment is within the scope of the bankruptcy court's authority.

**Alleged Facts and Procedural Background**

The complaint sets out a simple claim for relief. The plaintiff, Quality Food Products, Inc. ("QFP"), and the defendant, Jose Bolanos, were allegedly both PACA "dealers." (Compl. ¶¶ 5-6). Bolanos was "an officer, director, and/or principal of B&M Wholesale Produce," responsible for its operations. (Compl. ¶ 7).[1] QFP obtained a default judgment against Bolanos from the District Court for the Northern District of Illinois for more than $44,000 based on a breach of his duties under PACA (Compl. ¶¶ 8-10), specifically, for failing "to pay . . . promptly and in full for . . . [p]roduce delivered" (Compl. ¶ 23). Therefore, QFP alleges, the judgment against Bolanos arises from a "defalcation while acting in his fiduciary capacity to [QFP] and . . . should be excepted from discharge under § 523(a)(4) of the Bankruptcy Code." (Compl. ¶ 25).

The district court's judgment was entered against Bolanos by default on July 12, 2011. On July 30, 2011 Bolanos filed a Chapter 13 bankruptcy case that he later converted to one under Chapter 7. QFP filed the pending adversary proceeding on November 14, 2011, and after Bolanos failed to respond, QFP filed a motion for default judgment. When the motion was presented, the court denied it and

---

[1] The complaint does not state whether B&M Wholesale Produce was an entity separate from Bolanos or simply a name under which he did business as a sole proprietor. But the difference is not material to QFP's complaint. Even if B&M Wholesale Produce were a separate entity, Bolanos would be responsible as a controlling person for B&M Wholesale Produce's breach of the PACA trust. *See Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir. 2002) (stating that PACA "permits recovery against both the corporation and its controlling officers" for breach of the PACA trust).

3

dismissed the adversary proceeding for failure to state a claim upon which relief can be granted. Quality then moved to vacate the order of dismissal.

**Discussion**

QFP's motion to vacate is brought under Fed. R. Bankr. P. 9023, which incorporates Fed. R. Civ. P. 59(e) and so allows a court to modify a judgment based on an error of law. *See Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) ("Rule 59(e) . . . enables the court to correct its own errors and thus avoid unnecessary appellate procedures.").

Although post-judgment briefing has permitted a more thorough consideration of the legal issues QFP has raised, that consideration confirms that the complaint was correctly dismissed.

*1. The effect of the debtor's failure to appear.*

As an initial matter, Bolanos's failure to participate in this proceeding does not, by itself, require entry of default judgment against him, and QFP does not claim otherwise. A court may review the merits of any request for relief although the request is uncontested. *In re Franklin*, 210 B.R. 560, 562 (Bankr. N.D. Ill. 1997) ("Critical review of uncontested motions . . . is consistent with a basic legal principle—that courts are not required to grant a request for relief simply because the request is unopposed."). Indeed, in the context of Chapter 13 plan confirmation, the Supreme Court has recognized that bankruptcy judges may deny uncontested relief. *See United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1381 (2010). This principle applies equally to adversary complaints and motions for default judgment.

4

*In re Sziel*, 206 B.R. 490, 495 (Bankr. N.D. Ill. 1997) (denying a motion for default judgment on a nondischargeability complaint). QFP's request for a default judgment, then, allowed the court to consider whether QFP's complaint states facts that as a matter of law make its claim against Bolanos nondischargeable under § 523(a)(4).

    *2. The meaning of "acting in a fiduciary capacity" under § 523(a)(4).*

    Section 523(a)(4) provides that a bankruptcy discharge "does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." QFP's complaint does not allege fraud, embezzlement, or larceny. Its request for a judgment of nondischargeability is grounded solely on the allegation that Bolanos committed a defalcation while acting in a fiduciary capacity.

    The Seventh Circuit has issued several decisions treating the scope of "fiduciary capacity" under § 524(a)(4), most recently and extensively in *Follett Higher Education Group, Inc. v. Berman (In re Berman)*, 629 F.3d 761, 767-69 (7th Cir. 2011). The *Berman* decision traces a history of decisions interpreting statutory provisions excepting debts from discharge based on a breach of fiduciary duty. Four of the cited decisions are particularly relevant here.

    The earliest decision, *Chapman v. Forsyth,* 43 U.S. (2 How.) 202 (1844), interpreted a provision of an 1841 bankruptcy law that excepted from discharge debts "created in consequence of a defalcation as a trustee." *Id.* at 207. The Court noted that although "almost all the commercial transactions of the country" involve some

5

measure of trust among business people, this sort of trust "is not the relation spoken of in . . . the act." *Id.* at 207-08.  Rather, the Court said, "[t]he act speaks of technical trusts, and not those which the law implies from the contract." *Id.* at 208. The Court accordingly held that a factor's sale of goods belonging to the plaintiff, without transmitting to the plaintiff the proceeds of the sale, did not constitute a defalcation as trustee.  *Id.*

The next decision, *Davis v. Aetna Acceptance Co.,* 293 U.S. 328 (1934), interpreted § 17(4) of the Bankruptcy Act of 1898, the language of which is nearly identical to that of § 523(a)(4) of the Bankruptcy Code.  In *Davis*, a lender advanced funds to an automobile dealer; the dealer used the funds to purchase a vehicle for resale; and in connection with the loan, the dealer executed a deed of trust, stating that the dealer held the purchased vehicle in trust for the lender.  *Id.* at 330.  As in *Chapman*, the Court found that the dealer's later failure to pay the loan did not constitute a breach of trust.

> The trust receipt may state that the debtor holds the car as the property of the creditor; in truth, it is his own property, subject to a lien. . . . The substance of the transaction is this, and nothing more, that the mortgagor, a debtor, has bound himself by covenant not to sell the mortgaged chattel without the mortgagee's approval. The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust.

*Id.* at 334.

The third decision, *In re Marchiando*, 13 F.3d 1111, 1113 (7th Cir. 1994), dealt with § 523(a)(4) itself, as applied to a trust created by an Illinois statute.  The

6

decision makes several points that bear on QFP's complaint:

• The basic rationale for nondischargeability under § 523(a)(4) is that in a "technical" trust—one in which a settlor expressly conveys property to a trustee to be held for a beneficiary—"the settlor and beneficiary repose 'trust' in a literal sense in the trustee, and the abuse of that trust is considered a serious wrong." *Id.* at 1115.

• Courts and legislatures have applied the concept of a fiduciary trust to relationships in which there is a similar reposing of trust, such as attorney/client and managing partner/limited partner, and breaches of duty in those relationships similarly give rise to nondischargeable debts under § 523(a)(4) even though "there is no trust in the conventional sense." *Id.*

• A statute may render debts nondischargeable under § 523(a)(4) by providing that they involve a breach of trust, but only if the statutory trusts have "an existence independent of the debtor's wrong" and are not simply "devices by which the state sought to establish and enforce a lien in the proceeds [of collateral], the better to collect them securely." *Id.* at 1115-16. Thus, in order to result in nondischargeability, the relationship said by a statute to generate a trust must be one "in which one party to the relation is incapable of monitoring the other's performance of his undertaking"; a statute cannot "deny a fresh start to . . . debtors by declaring all contractual relations fiduciary." *Id.* at 1116.

The statute involved in *Marchiando,* 20 ILCS 1605/10.3 (1983), provided that proceeds a sales agent received from the sale of state lottery tickets constituted a

7

trust until paid to the state; that the sales proceeds had to be segregated; and that the sales agent was personally liable for failure to make the required payment to the state. *Marchiando*, 13 F.3d at 1113. In a holding similar to *Chapman* and *Davis*, the Seventh Circuit held that a sales agent who failed to pay lottery proceeds to the state did not engage in a defalcation while acting in a fiduciary capacity under § 523(a)(4) because the underlying relationship involved no disparity of bargaining position or reposing of special trust. *Id.* at 1116-17. "The convenience-store keeper who commingles the proceeds of her lottery ticket sale with her other receipts is at a considerable remove from the lawyer who converts money in his clients' escrow accounts or the bank trust department that invests someone's retirement fund recklessly." *Id.* at 1116.

The final relevant decision cited in *Berman* is *In re McGee*, 353 F.3d 537 (7th Cir. 2003). Like *Marchiando*, *McGee* dealt with a statute that created a trust– specifically, a provision of the Chicago Municipal Code dealing with a landlord's treatment of the security deposit for a residential lease. *McGee*, 353 F.3d at 540. The ordinance had three critical requirements for such security deposits: "the money must be deposited in an insured account in a financial institution; . . . the funds [must] remain the tenant's property while on deposit; [and] every tenant's deposit must not be commingled with other assets." *Id.* These characteristics, the court said, imbued the security deposit with the essential characteristics of an express, technical trust and so made a debt resulting from a breach of the trust nondischargeable under § 523(a)(4). "Segregation of funds, management by finan-

8

cial intermediaries, and recognition that the entity in control of the assets has at most 'bare' legal title to them, are hallmarks of the trust. These real attributes, not the labels applied by the ordinance, bring into play a fiduciary obligation and thus § 523(a)(4)." *Id.* at 540-41.

Consistent with the decisions just discussed, *Berman* read "acting in a fiduciary capacity" under § 523(a)(4) as involving "either an express trust or an implied fiduciary status," with the understanding (1) that a statute can have the effect of creating an express trust but only if it imposes the essential characteristics of a trust, and (2) that a statute may recognize a fiduciary relationship but only in situations where the fiduciary is in a position of unequal power or knowledge. *Berman*, 629 F.3d at 769-70.

*3. The absence of § 523(a)(4) fiduciary capacity under PACA.*

The trust imposed on purchasers of agricultural commodities is set out in § 499e(c)(2) of PACA. It states that

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

9

7 U.S.C. § 499e(c)(2). The regulations implementing PACA provide that "[t]rust assets are to be preserved as a non-segregated 'floating' trust" and that "[c]ommingling of trust assets is contemplated." 7 C.F.R. § 46.46(b) (2010).

A PACA trust does not put the purchaser in a fiduciary capacity under the interpretation of § 523(a)(4) discussed above. First, PACA does not create an arrangement akin to an express trust. Unlike the security deposit in *McGee*, there is no property of the seller that the buyer is required to keep safely segregated, and ownership of the property is not intended to remain with the seller. To the contrary—just as the factor in *Chapman* or the auto dealer in *Davis*—the commodity buyer under PACA is fully expected to sell the property covered by the trust. Indeed, the Illinois statute in *Marchiando* was more like an express trust in that the proceeds of the lottery ticket sales were at least required to be segregated. Under PACA, there is no requirement for segregation; the trust "floats" on all of the assets held by the purchaser. Like the trust receipt in *Davis*, the PACA trust is effectively functions as a lien, assuring payment for the goods shipped to and sold by the purchaser. [2]

---

[2] A number of courts have advanced a different interpretation of a PACA trustee's fiduciary obligations for purposes of § 523(a)(4), holding the language of the PACA statute does impose a technical trust. *See, e.g., E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99, 105 (Bankr. E.D.N.Y. 2009); *A.J. Rinella & Co., Inc. v. Bartlett (In re Bartlett)*, 397 B.R. 610, 620 (Bankr. D. Mass. 2008); *KGB Int'l, Inc. v. Watford (In re Watford)*, 374 B.R. 184, 190 (Bankr. M.D.N.C. 2007). As discussed above, however, the *Marchiando* and *McGee* decisions require that a technical trust for purposes of § 523(a)(4) have features of res definition, protection, and ownership in the beneficiary, all of which are absent from PACA trusts.

Second, the relationship between buyer and seller of agricultural commodities does not reflect any disparity of knowledge or power that would give rise to an implied fiduciary capacity in the buyer.  Unlike lawyers and bank officers, the buyer of agricultural commodities has no particular expertise or authority relative to the seller.  Indeed, the seller may be a substantial agribusiness and the buyer—like Bolanos here—an individual with limited income.[3]  The rationale for imposing the PACA trust has nothing to do with the power and knowledge of the participants in the sale transaction but rather with the nature of the commodities being sold, reflecting an intent on the part of Congress to give the seller a right to payment ahead of a buyer's other secured creditors:

> Due to a large number of defaults by the purchasers, and the sellers' status as unsecured creditors, the sellers recover, if at all, only after banks and other lenders who have obtained security interests in the defaulting purchaser's inventories, proceeds, and receivables. *See JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 77 (2d Cir. 1990); H.R.Rep. No. 543, at 3, *reprinted in* 1984 U.S.C.C.A.N. at 406–07. In order to redress this imbalance, Congress added Section 499e(c) to PACA, Pub.L. No. 98–273, 98 Stat. 165 (1984), which impresses a trust in favor of the sellers on the inventories of commodities . . . . H.R.Rep. No. 543, at 4, *reprinted in* 1984 U.S.C.C.A.N. at 407.

*Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1067 (2d Cir. 1995).

---

[3] Bolanos's Schedule I income reflects monthly income of $3,900.  Voluntary Pet. at Schedule I, *In re Bolanos*, No. 11-B-31339.

11

Because the alleged relationship between QFP and Bolanos arose out of an arm's-length commercial transaction with no inherent difference in knowledge or power between the parties, there is no basis for the allegation that Bolanos was acting in a fiduciary capacity toward QFP. Dismissal of the complaint was appropriate.

## Conclusion

Because QFP has not established grounds for relief from a final judgment as required by Fed. R. Bankr. P. 9023, its motion to vacate the court's order of January 11, 2012 will be denied. A separate order will be entered consistent with this opinion.

Dated:  July 30, 2012

_____
Eugene R. Wedoff
United States Bankruptcy Judge

12